## American Diversified Corporation v. Bureau of Employment Security, Department of Labor and Industry.

Argued January 12, 1971, before Judges CRUMLISH, JR., WILKINSON, JR., and MANDERINO, sitting as a panel of three.

John C. Sullivan, with him *Nauman, Smith, Shissler & Hall,* for appellant.

*James J. Morley,* Assistant Attorney General, with him *J. Shane Creamer,* Attorney General, for appellee.

OPINION BY JUDGE WILKINSON, March 24, 1971:

The issue presented for decision in this case is whether appellant must pay unemployment compensation tax based upon commissions paid certain salesmen. While admitting that the salesmen were "employees" and the commissions were "wages," as defined in the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P. L. 2897, 43 P.S. 751, the appellant claims to be free from the tax under either one or both of the following two provisions of the same act:

". . . Services performed by an individual for wages shall be deemed to be employment subject to this act, *unless* and until it is shown to the satisfaction of the department that—(a) such individual has been and will continue to be *free from control* or direction over the performance of such services both under his contract of service and in fact; *and* (b) as to such services such individual is customarily engaged in an *independently established trade,* occupation, profession

or business." Section 753 (1) (2) (B). (Emphasis supplied.)

"Service performed by an individual for an employer as an insurance agent or real estate salesman or as an insurance solicitor or as a real estate broker or as a solicitor of applications for, or *salesman of, shares of or certificates issued by an investment company,* or as an agent of an investment company, if all such service performed by such individual for such employer is performed for remuneration solely by way of commission, or services performed by an individual as an unsalaried correspondent for a newspaper, who receives no compensation, or compensation only for copy accepted for publication." Section 753 (1) (4) (17). (Emphasis supplied.)

Since we conclude that the appellant's position upon the proper application of section 753 (1) (2) (B) to the facts here presented is sound, it is not necessary for the court to consider the validity or invalidity of the application of the exemption of section 753 (1) (4) (17), and we do not express a view thereon.

With regard to section 753 (1) (2) (B), the law is clear that the burden is on appellant to produce facts that establish both that its salesmen are free from direction and control, and that the work they performed was done in the course of an independently established trade, occupation, business or profession. The Commonwealth relies upon the very recent case of *In Re: International Textbook Company,* 92 Dauphin 83 (1969), not only for this very well established point, but also for the general proposition that the position of the appellant is unsound. In that case, President Judge KREIDER, after reviewing the facts in detail, found that the engineer there involved had previously been a regular employee but was discharged and immediately reengaged as an "independent contractor" to perform the

same services and subject to the same control: "A reading of the entire record convinces us that during the period in question Mr. Manville was in the employ of appellant's subsidiary, Haddon Craftsmen, Inc., and was subject to its control. . . ." *In Re: International Textbook Company*, 92 Dauphin 83, 90 (1969).

The instant case is clearly distinguished from the *International Textbook* case and the long line of cases therein discussed and relied upon by appellee because in this case it has been found as a fact that there was no control exercised by appellant over the salesmen. Amply supported by the evidence and other findings, Finding of Fact 5(e) reads as follows: "(e) The manner in which the salesmen conducted their activity was at no time directly supervised or controlled by Petitioner; prospective buyers could be contacted at any time; follow-ups were not required; and no reports of activity were necessary. (N.T. 11, 19, 25, 34, 37)." Therefore, appellant has clearly met the first half of the requirement, and this line of cases is inapposite.

The basis on which the examiner and the Bureau found that the appellant had not met his burden on the second half of the requirement was that the salesmen were licensed under The Pennsylvania Securities Act of 1939, P. L. 748, 70 P.S. 31, and were considered to be employees by that Act; this was considered to be controlling on the matter that they could not be in an independently established business. In this position, the appellee relies heavily upon two cases, both of which we distinguish. In *Bureau of Employment Security v. Hecker and Company*, 409 Pa. 117, 185 A. 2d 549 (1962), the Supreme Court of Pennsylvania uses language which tends to support appellee's position, but the facts were quite different as stipulated by the parties and quoted by the court. The company whose shares the salesman sold on commission provided him

with a desk in an office, clerical and secretarial service, telephone and general office services. In the instant case, none of these or any other services were supplied by appellant. The other case is *Public Finance Service Inc. v. Commonwealth,* 56 Dauphin 4 (1952). In that case, the salesman worked for the company whose shares he sold for four years. The court relied entirely in that case on the fact that The Pennsylvania Securities Act defined the relationship and this was controlling.

It is this Court's position that the only Act controlling in the application of the Unemployment Compensation Law, wherein this unique definition and unusual exemptions are established, is that Act itself. The definitions and exemptions in other Acts are relevant and, on some facts, persuasive but not controlling. Thus, in the *Hecker* case, the fact that no social security tax was payable under the Social Security Act was not controlling. Indeed, in the recent case of *Klingensmith v. Department of Labor and Industry,* decided February 4, 1971 by this Court, with an opinion by Judge MANDERINO, the fact that appellant was the registered licensed barbershop owner and therefore responsible under the licensing act for all the barbers in his shop was not controlling on the issue of whether the compensation earned by the other barber in the shop was wages under the Unemployment Compensation Act.

American Diversified Corporation, appellant, a Pennsylvania corporation, sold its stock in Pennsylvania during 1968 and 1969. The entire case of the Commonwealth, appellee, was presented by three witnesses. From these witnesses' testimony and the exhibits, the appellee would have us conclude that these three witnesses and the other salesmen of the appellant were employees and not independent contractors. They all

testified that they went to a dinner meeting or "seminar" at the Embers Motel in Carlisle. The meeting appears to have been open to the public, for the witnesses testified that they came uninvited by appellant and because they heard about it from a friend. At the meeting the appellant explained its plans for the sale of stock and invited anyone interested to fill out an application to be licensed by the Pennsylvania Securities Commission. Each applicant paid his own license fee of $15.00 and was not reimbursed. Everyone was supplied with brochures of the appellant's plans, prospecti, and agreement forms for purchasers to use to purchase stock. Anyone who became licensed by virtue of his own application and payment of his own license fee could sell the appellant's stock anywhere in Pennsylvania. If and when he did, he received a commission on the sale. If he did not sell any stock, he received absolutely nothing. The record shows that some 38 people in attendance were licensed by the Commonwealth but never sold stock and never had any further contact with the company. Of the appellee's three witnesses, one was among the 38 who did not sell any stock and had no further contact with the company. Surely, appellee would not urge upon us that he was an employee. A second witness made one sale of 10 shares at $2.50 a share. This sale was to his wife! The third witness sold 1,000 shares at $2.50 a share. This was the only witness of whom appellee asked the following key questions: "Q. In selling securities, did you operate under your own name? A. Yes sir. Q. In what manner, so to speak? A. Just as Edward Kendra." The total time these three witnesses were selling appellant's stock was a matter of a few weeks after which they discontinued their license to sell appellant's stock and at least one applied to sell stock of another corporation.

The uncontradicted testimony, and largely that of appellee's witnesses, is that appellant exercised no control of the sales or over the salesmen, did not supply any leads, paid no expenses, supplied no facilities, no telephone, no office space, neither required nor received reports, and when commissions were paid, neither social security tax nor federal income tax was withheld. Indeed, there were no deductions made from the commissions paid.

The Unemployment Compensation Law of Pennsylvania goes very far, and properly so, and places a very heavy burden on the applicant when it makes payment to anyone who has performed a service to excuse or exempt that payment from the unemployment compensation tax. Few indeed are the instances where that burden can be met, and it was not met in the *Hecker* case or the *Public Finance Service* case. We feel it clearly was met here. Therefore, this appeal is sustained and we enter the following

ORDER

AND Now, March 24, 1971, the assessment of unemployment compensation made against American Diversified Corporation by the Bureau of Employment Security, Department of Labor and Industry, Commonwealth of Pennsylvania, as it reflects assessments for wages paid salesmen, the subject of this appeal, is stricken. By stipulation of the parties, this amount was $7,493.00 unpaid tax, and $1,137.00 interest, which amounts were paid under protest and shall be refunded.