Unemployment Compensation Board of Review *v.*
Milton W. Kessler, Jr., Appellant.

2

Argued June 10, 1976, before President Judge BOWMAN and Judges CRUMLISH, JR., and BLATT, sitting as a panel of three.

*Steven H. Lupin,* for appellant.

*Charles G. Hasson,* Assistant Attorney General, with him *Sydney Reuben,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE BLATT, October 25, 1976:

Milton W. Kessler, Jr. (claimant) appeals from an adverse decision of the Unemployment Compensation Board of Review (Board), dated October 3, 1975.

On April 29, 1975, while receiving unemployment benefits resulting from a qualifying separation from

a previous employer, the claimant began working on a commission basis as a full-time salesman for Lamson Fasteners (Lamson), a Philadelphia business organization, soliciting orders for industrial fasteners from business establishments in "Eastern Pennsylvania." The claimant testified that Lamson did not provide him with sales leads nor equip him with sales aids, such as price lists or catalogues. He himself determined what businesses to visit and, only when he ascertained an enterprise's requirements for industrial fasteners, did he contact Lamson so that a price quotation could be made. At the time of the referee's hearing on July 2, 1975, the claimant was still involved in this venture, but had not yet been compensated by Lamson for his efforts.

On the basis of this testimony, the Board found that Lamson neither controlled, nor had the right to control, the claimant's activities as a salesman, and that, therefore, being self-employed, he was no longer eligible for unemployment compensation benefits, such benefits being prohibited under Section 402(h) of the Unemployment Compensation Law[1] (Act), 43 P.S. §802(h). This appeal followed.

In unemployment compensation cases, our scope of review is limited to questions of law, and, in the absence of fraud, to a determination of whether or not the findings of the Board are supported by the evidence, giving the party prevailing below the benefit of all reasonable and logical inferences. *Rice v. Unemployment Compensation Board of Review*, 19 Pa. Commonwealth Ct. 592, 338 A.2d 792 (1975).

---

[1] Section 402(h) of the Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(h) provides, *inter alia*, as follows:

"An employe shall be ineligible for any week—

. . . .

"(h) In which he is engaged in self-employment. . . ."

While the Board's decision here may at first appear to penalize an ambitious person who, after having been unemployed for three (3) months, sought to become self-supporting through his own business initiatives, it must be borne in mind that the Act's denial of benefits to self-employed individuals is grounded on sound policy, and that the Act is not designed "to insure a weekly income to those engaged in business ventures who may not realize a profit therefrom during various weekly periods." *Muchant Unemployment Compensation Case,* 175 Pa. Superior Ct. 85, 88, 103 A.2d 438, 440 (1954). Our task on review, therefore, is to determine whether the claimant, by involving himself in the activities of a salesman as herein described, was self-employed or an employe of Lamson.

The Legislature has not defined self-employment. Past decisions, however, have examined this issue in the light of the statutory language which concerns "employment," and have excluded from benefit status those who have failed to satisfy the requirements of *that* section. *See, e.g., Laswick v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct. 356, 310 A.2d 705 (1973). We are, of course, constrained to follow these precedents.

We must note, therefore, that Section 4(1) of the Act, 43 P.S. §753(1), defines an employe as one who performs services in an employment relationship with an employer, and that the Act defines the employment relationship in pertinent part as follows:

"Services performed by an individual for wages shall be deemed to be 'employment' subject to this act unless and until it is shown . . . that (a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract or service and in fact; and (b) as to such service such individual is customarily engaged in an independently established trade, occupa-

tion or business." Section 4(1)(2) of the Act, 43 P.S. §753(1)(2)(B).

This language makes it clear that a claimant can be classified as self-employed *only* when it is established that: (1) he is not subject to the control of his employer; *and* (2) he is "customarily engaged in an independent trade." *Pennsylvania Bureau of Employment Security v. Hecker & Co.*, 409 Pa. 117, 185 A.2d 549 (1962); *C. A. Wright Plumbing Company v. Unemployment Compensation Board of Review*, 6 Pa. Commonwealth Ct. 45, 293 A.2d 126 (1972).

Whether or not the employer "controls" or has the "right to control" the activities of those who look to him for compensation must be determined on the facts of each case. The following features have been identified as key factors in determining control or right to control in situations involving commission salesmen: (1) a definite assignment of territory; (2) a required number of interviews to be made within a prescribed time period; (3) mandatory attendance at sales meetings; and (4) regular filing of progress reports. *Department of Labor and Industry v. R. T. Schaller Co., Inc.*, 88 Dauph. 386 (1968). The method of operation in the instant case is in sharp contrast to the indicia of control listed above. Here, the claimant was not assigned a well-delineated area to canvass; he himself determined what hours to work and which business establishments to visit; and he was not required either to attend sales meetings or to file regular reports. As noted above, the Board, in its analysis of the facts of this case, could find no control by Lamson over the claimant's activities as a salesman. Nor can we.

Our inquiry also reveals that the claimant was, in accordance with prior judicial interpretation, "customarily engaged in an independent trade." We have said that an individual is customarily engaged in an

independent trade where it is evident that he has a proprietary interest in some business which he can operate freely from the control of any other individual. *C. A. Wright Plumbing Company v. Unemployment Compensation Board of Review, supra.* An expanded version of this test was applied by the Court of Common Pleas of Dauphin County when it had jurisdiction over appeals from the Board. That court held that one is customarily engaged in an independent trade where it appears that he is "capable of performing the particular activities in question for any who wish to avail themselves of such services; and . . . the nature of the activity [is] not such that the individual [is] compelled to look to only a single employer for the continuation of such services on an ordinary employer-employee relationship." *Bureau of Employment Security v. AAA Moving and Storage Company,* 76 Dauph. 335, 341 (1961). Here, it is clear that the claimant's services were performed without interference from Lamson and could be undertaken without regard to the identity of the employer, so that it is proper to conclude that he is customarily engaged in an independent trade.

In a case which presented a factual background similar to the case at hand but called for a determination of an employer's liability for unemployment compensation tax on commissions paid to salesmen, we held that where the employer "exercised no control over the sales or over the salesmen, did not supply any leads, paid no expenses, supplied no facilities, no telephone, no office space, [and] neither required nor received reports . . . " the "employes" were, in fact, self-employed. *American Diversified Corp. v. Bureau of Employment Security,* 1 Pa. Commonwealth Ct. 527, 533, 275 A.2d 423, 426 (1971). We find *American Diversified, supra,* to be persuasive au-

thority for concluding that the claimant here is, as a matter of law, self-employed.

We must, therefore, conclude that the claimant, having embarked upon self-employment while otherwise eligible to receive benefits, was disqualified from future receipt of benefits, such disqualification being pursuant to Section 402(h) of the Act, 43 P.S. §802(h). *See Laswick v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct. 356, 310 A.2d 705 (1973). Moreover, the claimant is barred from benefits even though he had not received any income from the venture. *Keslar Unemployment Compensation Case,* 202 Pa. Superior Ct. 434, 195 A.2d 886 (1963).

It is true that counsel for the claimant contends that the referee's "Findings of Facts," which were adopted *in toto* by the Board, reflect a capricious disregard for the competent evidence of the record, arguing that the record shows enough evidence of control to establish an employer-employe relationship. Capricious disregard is defined, however, as a willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching the result. *Aluminum Company of America v. Theis,* 11 Pa. Commonwealth Ct. 587, 314 A.2d 893 (1974). Our review of the record here fails to disclose any such capricious disregard of the evidence offered. The claimant did make statements at the referee's hearing which, when considered alone, would suffice to indicate the control associated with an employer-employe relationship. These statements, however, are not consistent with the claimant's entire testimony,[2] and, where the claimant

---

[2] For example, counsel for the claimant contends that his client testified that he was assigned to work in a specific area. The claimant, however, also testified that there was no designated area that

makes inconsistent statements, it is for the fact-finder to determine which are the more credible and we are bound by his determination. *Donnelly v. Unemployment Compensation Board of Review,* 17 Pa. Commonwealth Ct. 39, 330 A.2d 544 (1975).

We, therefore, issue the following.

ORDER

AND Now, this 25th day of October, 1976, the order of the Unemployment Compensation Board of Review is hereby affirmed and the appeal of Milton W. Kessler, Jr. is dismissed.

---

he was required to cover. In addition, counsel argues that the claimant averred that he was *required* to call his superior with information for quotes on prices but the record reveals that no reports were required and that the calls for quotes were simply the customary manner of reporting orders.