Frank Jerry Kuhn, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs May 6, 1981, to President Judge CRUMLISH and Judges BLATT and WILLIAMS, JR., sitting as a panel of three.

*Frank Jerry Kuhn,* for himself, petitioner.

*William J. Kennedy,* Associate Counsel, with him *Richard Wagner,* Counsel, and *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

OPINION BY JUDGE WILLIAMS, JR., July 30, 1981:

Frank J. Kuhn (claimant) appeals from an Order of the Unemployment Compensation Board of Review (Board) which affirmed and modified a referee's decision which denied the claimant's application for unemployment compensation benefits.

The claimant was employed as an appliance specialist by National Fuel Gas Distribution Corporation (employer), a New York corporation, for twenty-one years. On August 15, 1977 he submitted a letter of resignation to the employer; the effective date of claimant's resignation was August 26, 1977. The claimant's reason for resigning, which was stated in the letter, was that he planned to relocate himself and his family in Arizona.

The move to Arizona occurred in September, 1977. Immediately prior to moving, the claimant invested $2200 in a one-day course in "new car brokerage." It

was the claimant's intention to support himself and his family by acting as a car sales broker while he explored employment opportunities in Arizona.

The claimant was unable to secure employment in Arizona; and he realized no income from his brokerage enterprise, although he advertised the availability of his services as a broker in a local Tucson newspaper, the "Dandy Dime." Consequently, he was in financial distress by January, 1978, which is when he applied for unemployment compensation from this Commonwealth through the Arizona Department of Economic Security (DES).

On January 31, 1978 the claimant submitted a signed statement to a DES interviewer in which the claimant stated that he had resigned from his job and moved to Arizona for the following reasons: (1) because he had been advised by his family doctor to move to a "dry humid [sic] climate" for the sake of his son's health;[1] and (2) because he planned to set up and operate a brokerage business out of his Arizona home during the day, while seeking full or part-time work in the evening. This statement was forwarded by DES to the Pennsylvania Bureau of Employment Security (Bureau).

On February 16, 1978 the Bureau determined that although the claimant had a valid separation from

---

[1] Claimant's son, ten years old at the time, suffered from chronic respiratory problems. To verify his son's health problem the claimant produced a letter from his doctor in Sharon, Pennsylvania. The letter, dated January 27, 1978, read as follows:

To whom it may concern:

This is to verify that Paul Kuhn had been under my care for a respiratory problem. It is advisable that Paul remain in a dry humid climate.

Sincerely,
Michael P. Ghiates, D.O., Inc.
Michael P. Ghiates, President

employment, he was ineligible to receive benefits; ineligibility was based upon Section 401(d) of the Unemployment Compensation Law (Law),[2] which section establishes ineligibility due to unavailability for suitable work. Both the claimant and the employer appealed from the Bureau's determination; the claimant appealed the ineligibility determination, and the employer appealed the determination that the claimant had a valid separation from employment under the Law. Thereafter, separate hearings were held at which the claimant (in Arizona) and the employer's representative (in New York) testified. Following these hearings a referee affirmed the Bureau's denial of benefits, and modified the statutory bases of ineligibility to Section 402(b)(1) of the Law,[3] voluntary quit without cause of a necessitous and compelling nature, and Section 402(h) of the Law,[4] self-employment. The instant appeal followed.

The claimant's broad contention before this Court is that the Board's decision is not supported by the record evidence. We disagree, and affirm the Board.

In voluntary quit cases, the burden is on the claimant to prove that he left his employment for cause of a necessitous and compelling nature. *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 378 A.2d 829 (1977); *Johnson v. Unemployment Compensation Board of Review*, 48 Pa. Commonwealth Ct. 376, 409 A.2d 961 (1980); *Milsop v. Unemployment Compensation Board of Review*, 45 Pa. Commonwealth Ct. 468, 405 A.2d 1017 (1979). "Good cause" for voluntarily leaving one's employment results from circumstances which produce pressure to terminate employment that is both real and substantial, and

---

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §801(d).

[3] 43 P.S. §802(b)(1).

[4] 43 P.S. §802(h).

which would compel a reasonable person under the circumstances to act in the same manner. *Taylor, supra.*

In the case at bar the claimant alleged that he was obligated to move to Arizona because of the poor health of his son, who was ten years old at the time. To support this allegation the claimant offered his own statement to that effect, which was made in January, 1978; and a letter from his family physician in Sharon, Pennsylvania, which was dated January 27, 1978. The employer's representative testified that at the time of claimant's resignation, the employer was not advised of claimant's son's condition; nor was the employer advised that claimant's relocation was caused by his son's condition. The employer's Director of Employment appeared before a referee in New York and testified that prior to being notified in February, 1978 of claimant's pending claim for benefits, the employer had no knowledge whatsoever that claimant's resignation in August, 1977 was eventuated by claimant's son's illness.

After considering the above testimony the Board concluded that the claimant had failed to carry his burden to show cause of a necessitous and compelling nature for resigning voluntarily. The Board cogently noted that, prior to resigning from his position, the claimant was not advised by a doctor that his son's condition *required* the move to Arizona; but rather that the move was undertaken by claimant *in the hope* that the change of climate would prove beneficial to his son's condition. Our review of this record discloses that the Board's conclusion in this regard is supported by substantial evidence; and must therefore be affirmed; *Taylor, supra; Progress Manufacturing Co. v. Unemployment Compensation Board of Review,* 406 Pa. 163, 176 A.2d 632 (1962).

The Board's second conclusion, that the claimant was ineligible due to self-employment, is also sup-

ported by substantial evidence of record. The claimant unequivocally stated that he was "in the process of setting up [his] own brokerage business." He further testified that he was an independent contractor in this endeavor, which he advertised in a local newspaper, and operated out of his home; and that, as of the March 23, 1978 hearing, he had completed two brokerage transactions for which he expected payment upon delivery of the vehicles to the buyers. It is established by the claimant's testimony that he was engaged in the customary activities of the "new car brokerage" business.

It has been consistently held by the appellate courts of this Commonwealth that a claimant can be classified as self-employed under the Law once it is established that he is not subject to the outside control of an employer, and that he is customarily engaged in an independent trade. *Commonwealth of Pennsylvania, Bureau of Employment Security v. Hecker & Co.*, 409 Pa. 117, 185 A.2d 549 (1962); *Law v. Unemployment Compensation Board of Review*, 41 Pa. Commonwealth Ct. 586, 399 A.2d 1173 (1979); *Unemployment Compensation Board of Review v. Kessler*, 27 Pa. Commonwealth Ct. 1, 365 A.2d 459 (1976). Under the instant circumstances, we find the foregoing authority dispositive that the claimant was self-employed as a matter of law; and we agree with the Board's conclusion in that regard.

Therefore, for the reasons above stated, the Board's Order affirming (as modified) the referee's denial of benefits to the claimant is affirmed.

ORDER

AND Now, the 30th day of July, 1981, the Order of the Unemployment Compensation Board of Review, at Decision No. B-166642, dated December 6, 1978, is affirmed.