**PEIDONG JIA, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 20, 2012.

Decided Sept. 7, 2012.

Publication Ordered Nov. 27, 2012.

Peidong Jia, pro se.

Maribeth Wilt–Seibert, Assistant Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, and SIMPSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge SIMPSON.

Peidong Jia (Claimant), representing himself, petitions for review of an order of the Unemployment Compensation Board of Review (Board) that denied him unemployment compensation (UC) benefits pursuant to Sections 402(h) and 4($l$)(2)(B) of the Unemployment Compensation Law (Law) (regarding self-employment).[1] In so doing, the Board reversed the referee's decision in favor of Quality Data Services (Employer) and made its own factual findings. Claimant contends the Board erred in determining he was an independent contractor rather than an employee. Upon review, we reverse.

Employer engaged Claimant as a statistical analysis software (SAS) programmer through a consultant agreement until it no longer needed his services.

Claimant applied for benefits, which were initially granted. Employer appealed. A referee held a hearing at which Claimant, and three Employer witnesses testified: Nancy Kohl, President; Laura Lawrence, Senior Manager of Program Records; and, Bonnie Frankenfield in Human Resources.

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §§ 802(h), 753($l$)(2)(B).

Employer's President testified that Employer did not provide instructions to Claimant on his tasks of SAS programming; rather, he was engaged through a consultant contract for his professional expertise and ability to work independently. The consultant contract outlined Claimant's scope of work specifying his hours at Employer's place of business. All hours are recorded on a project tracking system, and Claimant recorded his own time on that system. Claimant never submitted an invoice for his time as provided in the consultant contract, yet Employer paid him his hourly rate. The contract permitted Claimant to work elsewhere provided there was no conflict of interest.

Lawrence, who oversaw Claimant's contract, testified that she directed Claimant only as to Employer's regulations and compliance with their standard operating procedures (SOPs). Specifically, Lawrence directed Claimant to thoroughly document his activities. Employer did not give Claimant any benefits provided to employees like a 401K, and Claimant paid his own social security taxes. Claimant's income was reported on a 1099 form.

Claimant testified he was required to report to the office every day to work his eight hours. In support, he submitted the one-page scope of work setting forth his required eight-hour day during business hours at Employer's office. Claimant testified Lawrence served as his manager and supervised him almost daily. He needed to obtain Employer's approval for taking time off or working from home during a storm. He also claimed he was required to sign the employee handbook and an "employee signature log." Referee's Hr'g, Notes of Testimony (N.T.), 06/29/11, at 15. However, Claimant did not have a copy of the employee handbook. Claimant submitted a sales programmer manual he re-

ceived regarding how to find files and run codes for Employer. Claimant testified he was also required to read all the SOPs on the computer so he did not have a copy. He stated he did not have control over his job, and that Employer directed his activities.

The referee found that Claimant was not self-employed because Employer controlled and directed him, and that he was not engaged in an independently established occupation or trade. Employer again appealed.

Ultimately, the Board reversed, resolving any conflicts in testimony in Employer's favor, and finding Employer's witnesses credible. Specifically, the Board found the following nine facts:

1. The claimant last worked as an independent contractor for Quality Data Services from January 1, 2011 at a final rate of $35.10 an hour and his last day of work was March 2, 2011.

2. The claimant worked pursuant to an independent contractor agreement.

3. The claimant was aware that at the end of his working, he would receive a 1099 for tax purposes.

4. The claimant was working on a project and his work ended when the project was completed.[2]

5. The claimant did not have to attend meetings.

6. The claimant could work from home.

7. The claimant was paid the hours he worked as recorded in the project tracking system.

8. The claimant could work for other contractors as long as there was no conflict of interest.

9. The claimant provided his own insurance.

---

**2.** The record facts do not support this finding as the project was delayed, not completed.

Bd. Op., 10/04/11, Findings of Fact (F.F.) Nos. 1–9. Claimant now petitions for review.

On appeal,[3] Claimant asserts the Board erred in determining he was an independent contractor rather than an employee. Claimant argues Employer did not submit any evidence to prove he engaged in an independent business. He also contends he had no control over his work.

Section 402(h) of the Law provides an employee "shall be ineligible for compensation for any week ... in which he is engaged in self-employment." 43 P.S. § 802(h). The term "self-employment" is not defined in the Law. *Beacon Flag Car Co. v. Unemployment Comp. Bd. of Review*, 910 A.2d 103 (Pa.Cmwlth.2006). In assessing self-employment, we apply the language of Section 4(*l*)(2)(B) of the Law to fill the gap. *Kurbatov v. Dep't of Labor & Indus.*, 29 A.3d 66 (Pa.Cmwlth.2011).

Section 4(*l*)(2)(B) provides a two-prong test for determining whether a worker is an independent contractor or an employee. *Id.* It states in pertinent part:

Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that—(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.

43 P.S. § 753(*l*)(2)(B).

In employment cases, an individual receiving wages for his services is presumed to be an employee, and the employer bears a heavy burden to overcome that presumption. *Thomas Edison State Coll. v. Unemployment Comp. Bd. of Review*, 980 A.2d 736, 741 (Pa.Cmwlth.2009). To overcome this statutory presumption of employment, the employer must show that the individual performed the work free from the employer's control and direction, and that the work was done for others, not just the employer, as part of an independent trade. *Sharp Equip. Co. v. Unemployment Comp. Bd. of Review*, 808 A.2d 1019 (Pa.Cmwlth.2002). "[U]nless the employer can show that the employee [is] not subject to his control and direction and [is] engaged in an independent trade, occupation or profession, then [the worker is an employee]." *C.A. Wright Plumbing Co. v. Unemployment Comp. Bd. of Review*, 6 Pa.Cmwlth. 45, 293 A.2d 126, 129 (1972) (*en banc*); *see also Sharp; Venango Newspapers v. Unemployment Comp. Bd. of Review*, 158 Pa.Cmwlth. 379, 631 A.2d 1384 (1993).

We hold that Employer did not overcome the strong presumption of Claimant's status as an employee. While we question the Board's determination regarding Employer's purported control over Claimant,[4] it is clear the Board erred in its

---

**3.** Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated. *Oliver v. Unemployment Comp. Bd. of Review*, 5 A.3d 432 (Pa.Cmwlth.2010) (*en banc*).

**4.** "[A]n employment relationship is suggested when an employer controls the worker's work

hours." *Kurbatov v. Dep't of Labor & Indus.*, 29 A.3d 66, 71 (Pa.Cmwlth.2011) (citing *Sharp Equip. Co. v. Unemployment Comp. Bd. of Review*, 808 A.2d 1019 (Pa.Cmwlth.2006)). As in *Sharp*, Employer here dictated the time, place and manner for performance, and required permission to deviate from those schedules. As in *Kurbatov*, the contract here establishes a specific schedule, declaring a

resolution of the second prong involving an independent trade or business.

The Board's only analysis of the two-prong test consists of three sentences: "The claimant worked pursuant to the independent contractor agreement both under the contract of service and in fact. The claimant had an independent business as an independent contractor. Therefore, the claimant was an independent contractor." Bd. Op., 10/04/11, at 2. The Board's only finding related to his status as an independent contractor is Finding of Fact No. 8 that Claimant "could work for other contractors as long as there was no conflict of interest." Bd. Op., 10/04/11, F.F. No. 8.

The fact that Claimant signed a consulting contract is not dispositive of the work relationship. *Kurbatov,* 29 A.3d at 70 (citing *Victor v. Dep't of Labor & Indus.,* 166 Pa.Cmwlth. 663, 647 A.2d 289 (1994); *see also Hartman v. Unemployment Comp. Bd. of Review,* 39 A.3d 507 (Pa.Cmwlth. 2012) (intent and title of parties' agreement is less influential than the relationship in fact). Nevertheless, the Board's decision appears to rely entirely upon the existence of the consultant contract.

 In considering the second prong of the test, we examine whether: (1) the claimant was capable of performing the activities in question for anyone who wished to avail themselves of his services; and, (2) the nature of the business compelled the claimant to look to only a single employer for continuation of work. *Venango.*

This Court recently emphasized the importance of an employer supplying evidence to show that a claimant is engaged in an independent business in *Minelli v. Unemployment Compensation Board of Review,* 39 A.3d 593 (Pa.Cmwlth.2012). In *Minelli,* the claimant signed a contract as an independent contractor. The contract specified that she was "free to perform services for other parties while" working for the employer. *Id.* at 596. In that case, the Board specifically found that the claimant had no supervision and worked with other independent contractors, and was paid by the client. However, the claimant testified that she was not and never was customarily engaged in an independently established trade or business. This Court reversed the Board, holding that despite the fact the claimant could work for others, the evidence did not show the claimant was customarily engaged in an independent business.

Similarly, and significantly, the record here lacks any evidence that Claimant customarily engaged in an independent business or performed programming services for any other business. As in *Minelli* and *Sharp,* Claimant's testimony is clear that he was not so engaged, and there is no contrary evidence. The single act of signing the consulting contract here does not suffice. *Sharp.* The contract language providing that Claimant *could* work for others does not establish that he engaged in an independent business, and did work for others. *Minelli.* Moreover, the scope of work requires Claimant to work in Employer's offices during specified business hours, thus undermining his ability to work for others. *See Sharp.* The test an employer must satisfy to overcome the presumption of an employment relationship is simply not met here.

As we conclude the Board erred in finding Claimant was self-employed as an independent contractor under Sections

---

specific work-day and a specific location, Employer's offices, where Claimant must perform work during business hours.

402(h) and 4(*l*)(2)(B) of the Law, we reverse.

### ORDER

**AND NOW,** this 7th day of September, 2012, the order of the Unemployment Compensation Board of Review is **REVERSED.**